REQUESTED BY: David E. Bryan, Fillmore County Attorney.
Does the County Board of Equalization have the authority to fix values of land different from those set forth in Appraisal Manuals prepared by the Tax Commissioner pursuant to section 77-1330, R.S.Supp., 1979?
Yes.
In 1979 the Legislature amended section 77-1330, R.S.Supp., 1979 to read as follows:
 "The Tax Commissioner shall prepare, issue, and annually revise guides for county assessors in the form of handbooks of rules and regulations, appraisal manuals, special manuals and studies, cost and price schedules, news and reference bulletins, property tax laws and memorandums. County assessors shall continually use such guides in the performance of their duties. All appraisals or reappraisals of property for tax purposes shall be in compliance with such manuals and guides."
Section 77-1301.01 was amended to require that all reappraisals be based upon the use of appraisal manuals developed pursuant to section 77-1330, and section 77-1336 was amended to require the Tax Commissioner to issue rules and regulations containing minimum standards of assessment and appraisal performance, which standards shall relate to, among other things, compliance with state manuals and guidelines. The Legislation has been commonly said to make the use of these manuals mandatory, and your question is how rigidly they must be followed, and to what extent, if any, departures from them are authorized.
Among other things, these manuals have fixed certain values for different classes of farm land in different parts of the state. Does this preclude the County Board of Equalization from hearing a protest of an owner of real estate, pursuant to section 77-1502, R.R.S. 1943, and setting a value on a piece of real estate different from that found in the manual? We believe it does not.
First, we believe the statute does not clearly require rigid adherence to the values set in the manuals. It requires county assessors to `use such guides' in the performance of their duties, and section 77-1301.13 requires that reappraisals be `based upon' the reappraisal manuals developed pursuant to section 77-1330. These words fall short of forbidding any departure from the manuals, either by the county assessor or the appraisers, and certainly do not forbid the County Board of Equalization to exercise its normal equalization functions. As a matter of fact, the manuals themselves recognize that there can be variations from the values set in the manuals, because of individual peculiarities of a particular parcel of real estate.
Second, we would not hold that the County Board of Equalization was without power to depart from the manuals unless compelled by unequivocal statutory language, because such a construction would, in our opinion, render the statute constitutionally suspect, as denying property owners due process of law.
In 16A Am.Jur.2d 1070, Constitutional Law, § 853, we find this statement:
 "Due process of law requires a hearing before a court or other tribunal having jurisdiction of the cause either in equity or at law. The tribunal must be appointed by law and be governed by rules of law previously established. It must be a legally constituted body for determining the right in question." (Emphasis supplied.)
Landowners, of course, are not notified as to what value the Tax Commissioner proposes to put on their land, nor are they afforded any hearing when the manuals are prepared. The county assessor will, presumably, follow the manual, and the statutes provide for no hearing before him. They do, however, provide for notice of any increases he makes in the valuations, and section 77-1502, R.R.S. 1943, permits a landowner to file a protest and have a hearing before the County Board of Equalization. If, however, the County Board of Equalization is precluded from departing from the valuation set in the manual, this is a meaningless procedure, because the County Board of Equalization would then not be a legally constituted body `for determining the right in question.' Upon appeal to the district court from the action of the County Board of Equalization, the court would, presumably, affirm, on the basis that the Board had followed the manual, as it was bound to do.
Under this construction, landowners would have no way of contesting their valuations at any stage. We believe this would violate due process, so we do not so construe the statute. The County Board of Equalization can place values on property different from those in the manuals, if the evidence justifies it.
We think it clear however, that the Legislature intended that the manuals be given great weight, and that departures from the manual be the exception, and not the rule. We point out that if the county assessor has put all of a class of farm property at the same value, changing the valuation of one farm will put it out of equalization with similar farms. Further, if the County Board of Equalization were to change the values of all of a class, or of all classes, it would cause lack of uniformity between classes, or lack of equalization between counties, and the State Board of Equalization would, in all probability, be forced to take corrective action. So, while the County Board of Equalization has the legal power to make changes from the values set by the manuals, this power should be sparingly exercised.